UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 16-141-HRW

DIVERSICARE d/b/a SOUTH SHORE
NURSING AND REHABILITATION
CENTER, As Authorized Representative of
WILMA FRYER,                                                                                    PLAINTIFF,

v.                        MEMORANDUM OPINION AND ORDER

VICKIE YATES BROWN GLISSON,
in her official capacity as the Secretary of the
KENTUCKY CABINET FOR HEALTH
AND FAMILY SERVICES,                                                                   DEFENDANT.

This matter is before the Court Defendant's Motion to Dismiss Complaint, For Judgment on the Pleadings or for Summary Judgment [Docket No. 15]. The matter has been fully briefed by the parties [Docket Nos. 15, 16 and 17]. For the reasons set forth herein, the Court finds that it lacks subject matter jurisdiction over this matter and, therefore, dismissal is warranted.

I.

This civil action arises from Plaintiff Diversicare d/b/a South Shore Nursing and Rehabilitation Center's ("South Shore") efforts to obtain reimbursement from Medicare for the nursing home care it provided to Wilma Fryer. It generally alleges that Defendant Vickie Yates Brown Glisson, as the Secretary for the Kentucky Cabinet for Health and Family Services ("CHFS") failed to comply with its obligation to secure Medicaid benefits for residents in long-term care facilities. Specifically, it claims that Defendant's alleged failure to comply with both Kentucky and Federal law to determine Medicaid benefits to Plaintiff while receiving care at a

skilled nursing facility is a violation of the Federal Medicaid Act at 42 U.S.C. § 1396a (a)(17)(b) (1988); 20 CFR § 416.1201(a)(1); the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 794a, *et seq.*

The salient facts of this case are not in dispute. Plaintiff is a limited liability with its principal place of business, a nursing home, in South Shore, Kentucky. [First Amended Complaint, Docket No. 11, ¶7].

On March 11, 2014, Wilma Fryer became a resident of South Shore. She was admitted with diagnoses of dementia, weakness and other life limiting medical conditions. At the time of her admission, Ms. Fryer was incapacitated and during her admission became insolvent and unable to pay for her skilled nursing care. *Id.* at ¶ 11.

Her application for Medicaid benefits was submitted in May of 2014. *Id.* at ¶ 12. Ms. Fryer and her son, Jerry Coffee attempted to obtain the documentation needed for the application. *Id.* At the time of Ms. Fryer's application, however, Mr. Coffee did not possess Power of Attorney or Guardianship authority, and as such, he was unable to obtain the bank records, insurance verifications or any other documents that the Department of Community Based Services (DCBS), a Department within CHFS, required to process Ms. Fryer's application for benefits. At that time, verifications were inaccessible by Ms. Fryer due to her medical condition, and unavailable to anyone acting on her behalf. *Id.* at ¶ 13.

Subsequently, Mr. Coffee petitioned for Guardianship and obtained appointment as Guardian on July 25, 2014. *Id.* at ¶ 14.

On September 23, 2014, South Shore's business manager, Joe Staley applied for long term Medicaid benefits on behalf of Ms. Fryer, triggering the need for a resource assessment. CHFS's local Family Support workers requested South Shore produce various records needed to verify her eligibility. On September 24, 2014, Ms. Staley faxed 11 pages of records to CHFS consisting of Ms. Fryer's bank statement from a closed joint bank account Ms. Fryer had with her son, and documentation about the payoff history of the mortgage loan showing the net proceeds Ms. Fryer received when her home was sold. But CHFS also needed additional bank records to verify the net proceeds from the sale was deposited into Ms. Fryer's savings account and then spent down for her nursing home care, until she reached the $2000 nonexempt asset eligibility threshold.

A CHFS employee named Amanda Woods testified at the administrative hearing she sent multiple Request for Information ("RFI") forms to Ms. Staley. Ms. Woods testified she deferred taking action on Ms. Fryer's Medicaid application to give her representatives more time to obtain the records. Fryer's son gathered documents and emailed them to Ms. Staley at South Shore. He later told a Kentucky probate court it was not his fault if South Shore did not forward them.

Ms. Fryer passed away on October 23, 2014. *Id.* at ¶ 21. At the time of her death, her Medicaid application was still pending.

On November 24, 2014, Wilma Fryer's children petitioned a Kentucky probate court to dispense with administration because her only assets were a 1999 Jeep Grand Cherokee valued at $500, and $1,395 remaining in her checking account. The probate court granted the motion.

Ms. Woods sent three "we need information" letters sent to the Fryer's to let them know she could not complete the resource assessment but giving them more time. The initial deadline

3

was October 23, 2014, later extended to November 10, and then December 4, 2014 for South Shore and Ms. Fryer's family to furnish CHFS with the needed financial documentation. [Docket No. 15-3].

On December 9, 2014, after the last deadline lapsed, Ms. Woods notified South Shore Ms. Fryer's Medicaid application was denied for lack of complete documentation. *Id.* at ¶ 25 and Docket No. 15-4.

On January 7, 2015, South Shore appealed the denial Ms. Fryer's application for Medicaid benefits, on her behalf. [Docket No. 15-5].

On February 13, 2015, South Shore petitioned the Kentucky Greenup County probate court for appointment as Ms. Fryer's "authorized Medicaid representative" in an attempt to obtain retroactive Medicaid benefits to pay for Ms. Fryer's outstanding debt for nursing home care, which it represented was approximately $30,000. [Docket No. 15-7].

Over the objection of one of Wilma Fryer's sons, the Greenup County District Court, Probate Division, ordering that South Shore:

> shall act as the Authorized Medicaid Representative for Wilma J. Fryer and is authorized to take such actions as are necessary to qualify the decedent, Wilma J. Fryer, for Medicaid benefits due during her lifetime or otherwise appeal any previous denial of Medicaid benefits.

Docket No. 15-8.

Notably, the probate court order did not open an estate or appoint South Shore as administrator.

CHFS's Administrative Hearings Division scheduled Ms. Fryer's "fair hearing" for February 17, 2016. Two days before the administrative hearing, South Shore submitted additional savings account records of the decedent. During the hearing, South Shore's counsel asked the CHFS witness, Amanda Woods, why Ms. Fryer's application was denied. Ms. Woods testified that despite the extensions granted, the critical savings account documentation was not provided until after the denial letter. She was unable to complete the resource assessment needed to determine eligibility without the missing records. [Transcript of Hearing, Docket No. 15-10, pp. 2-4].

The CHFS Hearing Officer issued his recommended decision on May 5, 2016. He found from the weight of the evidence that South Shore failed to establish its agent produced Ms. Fryer's savings and loan records needed to determine eligibility prior to denial, despite numerous extensions. So he upheld the agency's decision denying any retroactive benefits. [Docket No. 15-11].

South Shore filed exceptions, arguing that CHFS should have retroactively approved Ms. Fryer incomplete application for Medicaid benefit based on the belatedly produced evidence at the hearing. [Docket No. 15-21].

The Kentucky Appeal Board for Public Assistance rejected Plaintiff's exceptions and adopted the CHFS Hearing Officer's final order on September 30, 2016, as the final agency decision. [Docket No.; 15-22].

On October 31, 2016, South Shore petitioned for judicial review to the Commonwealth of Kentucky Greenup Circuit Court, pursuant to KRS Chapter 13B, Kentucky's Administrative Appeals Act. [Doc # 1-1, Page ID # 5-17]. CHFS removed the case to this Court based on federal

removal jurisdiction. [Doc # 1, Page ID # 1-4]. South Shore filed its First Amended Complaint on March 13, 2017 [Doc # 11, Page ID # 43-67]. Ostensibly acting on behalf of Wilma Fryer, deceased, South Shore asserts federal claims based on CHFS's alleged violation of the Americans with Disabilities Act of 1990 ("ADA"), see 42 U.S.C. §§ 12101 *et seq.* (Count Four); violation of Section 504 of the Rehabilitation Act of 1973, see 29 U.S.C. § 794 (Count Five); violation of 42 U.S.C. § 1983, the federal Civil Rights Act; based on alleged violations of the federal Medicaid Act; and alleged violations of decedent's Due Process and Equal Protection rights from the U.S. Constitution, Fourteenth Amendment (Counts Two, Three and Six). South Shore also seeks declaratory relief (Count One), and temporary and permanent injunctive relief (Count Seven) for retrospective payment of Ms. Fryer's nursing home debt to South Shore.

Defendant seeks dismissal or, in the alternative, judgment as a matter of law. Defendant first challenges South Shore's standing to bring retrospective federal civil rights claims seeking damages on behalf of a deceased resident denied Medicaid benefits after her death.

## II.

Standing is the "threshold" question in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Without proper standing, subject matter jurisdiction does not exist.

Standing is the determination of whether a specific person is the proper party to bring a matter to the court for adjudication. The Supreme Court has declared that "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.*

The burden of establishing standing rests upon plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–562 (1992). However, at the pleading stage, general factual allegations of

injury resulting from defendant's conduct may suffice. *Id.* Standing is determined as of when plaintiffs file their complaint. *Javitch v. Transamerica Occidental Life Ins. Co.*, 408 F.Supp.2d 531, 533 (N.D.Ohio 2006) (*citing Senter v. General Motors Corp.*, 532 F.2d 511, 518 (6th Cir.)).

The United States Supreme Court has identified three constitutional standing requirements which a plaintiff must allege: 1) he or she has suffered or imminently will suffer and injury; 2) the injury is fairly traceable to the defendant's conduct; and 3) a favorable federal court decision is likely to redress the injury. *Lujan,* 504 U.S. at 560–561.

The Supreme Court has also identified three prudential standing principles which require a party to: 1) generally assert only his or her own rights, not claims of third parties; 2) not allege generalized grievances more suitable for legislative or executive resolution; 3) raise a claim within the zone of interest protected by the statute or constitutional provision in question. *Warth v. Seldin,* 422 U.S. at 499.

Where a defendant challenges a plaintiff's standing to bring suit, the Court should first consider whether it has subject matter jurisdiction pursuant to Rule 12(b)(1) before it considers the substantive merits of a pleading pursuant to Rule 12(b)(6). *Bell v. Hood*, 327 U.S. 678, 682 (1946). *See also, Coal Operators and Assoc. Inc., v. Babbitt*, 291 F.3d 912 (6th Cir. 2002). Plaintiff has the burden of proving jurisdiction in order to survive the Rule 12(b)(1) motion and must plead the elements of standing with specificity. *Coal Operators,* 291 F.3d at 916. A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face or attack the factual basis for jurisdiction. *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004). Where there is a facial challenge to standing, the Court must consider all of the allegations in the complaint as true. *Id.* Where there is a factual challenge to standing, the Court may consider evidence outside the

pleadings to resolve factual disputes and must weigh the evidence. *Id.*

### III.

It is a "fundamental restriction on [federal court] authority" that "[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400 (1991).

South Shore has no standing to file suit to assert any of Wilma Fryer's federal claims. When this action was filed, Ms. Fryer was already deceased. If decedent had any cause of action prior to her death, South Shore would have needed a valid appointment or power of attorney or assignment of right to act on her behalf executed by her legal guardian, because, according to the Amended Complaint, decedent had been adjudged legally incompetent. If South Shore had, in fact, obtained such authorization, it wold not have been necessary to seek an Order from the probate court with regard to pursing an appeal for Medicaid benefits.

After Ms. Fryer died, only an administrator of her estate could bring a federal claim on her behalf, not South Shore. Under Kentucky law, any surviving right of action under 42 U.S.C. § 1983, the ADA, or the Rehabilitation Act belonged to the duly appointed representative of Ms. Fryer's estate, not South Shore. South Shore is not the administrator of Ms. Fryer's estate. South Shore is, at best, a creditor. There are no Kentucky statutes that allow a creditor of an estate to sue directly on behalf of a deceased debtor.

Moreover, the probate order which Plaintiff insists provides the requisite standing in this lawsuit, does not authorize South Shore to act in place of the personal representative of the Wilma Fryer Estate, or sue on behalf of her estate asserting personal injury claims under the federal Civil Rights Act, the Americans with Disabilities Act or the federal Rehabilitation Act.

Plaintiff also argues that it has "associational standing" to assert federal personal injury claims and seek damages on behalf of the Wilma Fryer. This argument lacks merit.

An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose and neither the claim asserted or the relief requires participation by individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1972).

Associational standing is "reserved for organizations that 'express the[ ] collective views and protect the[ ] collective interests' of their members." *Fleck & Associates, Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1106 (9th Cir. 2006). Such is not the case here. South Shore is a for profit nursing home corporation. South Shore not a voluntary trade organization or association It was not formed to advocate for its residents. Rather, its residents are akin to customers. Ms. Frye was such a customer, who died with an unpaid bill and no assets in her estate to pay. *See Fednav, Ltd. v. Chester*, 547 F.3d 607, 616 (6th Cir. 2008)(holding shipping port company lacked associational standing to sue on behalf of its clients).

Nor does the fact when designated to do so, nursing homes may apply for Medicaid benefits for a resident bestow standing upon Plaintiff. Even assuming this power includes deceased residents, this does not confer blanket standing. Federal courts determine standing on a claim-by-claim basis. "[S]tanding is not dispensed in gross." *Price v. Medicaid Director*, 838 F.3d 739, 746 (6th Cir. 2016), quoting *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008). Standing to apply for benefits cannot be expanded to include standing to assert vicarious federal personal injury claims.

South Shore has not met its burden to establish associational standing to represent Wilma Fryer or her Estate, in whose interest it purports to represent, asserting federal personal injury claims. Therefore, this Court lacks subject matter jurisdiction.

## IV.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Complaint, For Judgment on the Pleadings or for Summary Judgment [Docket No. 15] be **SUSTAINED**.

This 27th day of October, 2017.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge